UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


MICHAEL G. O'CONNELL,
     Plaintiff,


     v.                                        CIVIL ACTION NO.
                                                10-10746-NMG

DEPARTMENT OF THE NAVY,
     Defendant.

                    **REPORT AND RECOMMENDATION RE:**
         **UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT**
         **MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)**
                          **(DOCKET ENTRY # 10)**

                          **December 21, 2010**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to dismiss filed by

the United States on behalf of defendant Department of the Navy

("the United States") pursuant to Rule 12(b)(1), Fed R. Civ. P.

("Rule 12(b)(1)").  (Docket Entry # 10).  The United States

argues that this action arises under the Federal Tort Claims Act,

28 U.S.C. §§ 2671 et seq. ("FTCA"), and that it is the proper

party.[1]  Acknowledging that the FTCA provides a limited waiver of

---

[1] The United States is correct.  Because the claims sound
in tort, the United States, as opposed to the Department of the
Navy, is the proper party.  A statute, "28 U.S.C. § 2679(a),
withdraws from federal agencies vested with the right to sue and
be sued the authority to be sued for the torts of any employee
acting within the scope of employment of his office under
circumstances where the United States, if a private person, would

sovereign immunity, the United States submits that this action does not fall within the reach of the waiver in light of the Feres doctrine.[2]

Plaintiff Michael G. O'Connell, a former United States Marine, alleges that he suffered grievous medical injuries from drinking water contaminated with toxic chemicals while stationed at Camp Lejeune Marine Corps Base ("Camp Lejeune") in North Carolina. (Docket Entry # 1). In objecting to the motion, he submits it is discriminatory to prevent him from maintaining a civil action because of the Feres doctrine while allowing civilians to bring similar actions and obtain relief. (Docket Entry # 12). After conducting a hearing on October 14, 2010, this court took the motion (Docket Entry # 10) under advisement.

STANDARD OF REVIEW

"Rule 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction." Valentin v. Hospital Bella

---

be liable, and makes the legal remedy under 28 U.S.C. § 1346(b) exclusive." Armor Elevator Co., Inc. v. Phoenix Urban Corp., 655 F.2d 19, 22 (1st Cir. 1981); accord Rivas v. U.S. Postal Service, 2010 WL 1328992, *6 (D.P.R. 2010) ("FTCA bars tort suits directed against federal agencies and their employees eo nomine").

[2] The doctrine originated in a 1950 Supreme Court decision, Feres v. United States, 340 U.S. 135 (1950).

2

Vista, 254 F.3d 358, 362-363 (1st Cir. 2001). Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed. See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is only appropriate when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id. Where, as here, "there is some doubt about" subject matter jurisdiction, consideration of the documents attached to the supporting memorandum (Docket Entry # 11) is appropriate. Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004); accord Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37 (1st Cir. 2000) (when presented with Rule 12(b)(1) motion, court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations"); Callahan v. U.S., 337 F.Supp.2d 348, 350 n. 2 (D.Mass. 2004). In light of plaintiff's pro se status, the complaint is liberally construed. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001).

BACKGROUND

From 1983 to 1987, plaintiff, presently 50 years old, was a

United States Marine.  As set forth in the complaint, the water he drank at Camp Lejeune "was tainted by many toxic chemicals during [his] time of active duty while stationed on [Camp Lejeune]."  (Docket Entry # 1).  Suffering from glaucoma, an inability to father children, a "chronic upper respiratory illness" and "many neurological issues," he believes these health problems are "the direct result of more than 18 toxic chemicals in the Camp Lejeune drinking water."  (Docket Entry # 1).

In an administrative claim filed with the Department of the United States Navy ("the Navy"), plaintiff states he "was poisoned by contaminated water will[sic] serving my country in the United States Marine Corps."  (Docket Entry # 10, Ex. 1).  In a questionnaire sent by the Navy, plaintiff acknowledges he was serving in the armed forces during the time he was exposed to the contaminated water at Camp Lejeune.  (Docket Entry # 10, Ex. 2). Plaintiff first drank the water at Camp Lejeune in July 1983. From July 1983 to 1984, he lived "at the Housing Point area at Camp Lejeune."  (Docket Entry # 10, Ex. 2).  He also visited the Tarawa Terrace housing development at the camp "most weekends" and was "drinking that water as well."  (Docket Entry # 10, Ex. 2).

From July to December 1986, plaintiff worked at the Hadnot

Point industrial area at the camp. The work consisted of mounting "communication equipment onto the new Humvee vehicles." (Docket Entry # 10, Ex. 2). "While working in the industrial area," he ate and drank at the "chow hall." (Docket Entry # 10, Ex. 2).

DISCUSSION

The United States, as a sovereign, "may not be sued for damages without its consent." Day v. Massachusetts Air Nat. Guard, 167 F.3d 678, 681 (1st Cir. 1999). Under the FTCA, the United States consented "to be sued for damages for personal injury caused by 'the negligent or wrongful act or omission' of a federal employee 'while acting within the scope of his employment,' if under the same circumstances a private employer would be liable for the acts of his employee under the local law." Diaz-Romero v. Mukasey, 514 F.3d 115, 118 (1st Cir. 2008) (citing and quoting 28 U.S.C. §§ 1346(b), 2674 & 2675(a)). The "judicially crafted" Feres doctrine bars suits by military service members against the United States "for injuries that 'arise out of or are in the course of activity incident to service.'" Diaz-Romero v. Mukasey, 514 F.3d at 118 (quoting Feres, 340 U.S. at 146).

Determining whether an injury is "incident to service" in the First Circuit entails examining:

> whether it occurred on a military facility, whether it arose out of military activities or at least military life, whether the alleged perpetrators were superiors or at least acting in cooperation with the military, and-often stressed as particularly important, whether the injured party was himself in some fashion on military service at the time of the incident. No single element in the equation, the Supreme Court has said, is decisive.

Day v. Massachusetts Air Nat. Guard, 167 F.3d at 682 (omitting internal citation to United States v. Johnson, 481 U.S. 681, 686 & n. 7 (1987)); accord Diaz-Romero v. Mukasey, 514 F.3d at 119 (also quoting Day, 167 F.3d at 682).

Applying these elements, the injury undoubtedly took place on a military facility, to wit, Camp Lejeune. Plaintiff's exposure to the contaminated water took place at the Tarawa Terrace or Hospital Point housing areas as well as at the "chow hall" at the Hadnot Point industrial area at the camp.

The injury also arose out of military life. Drinking water at Camp Lejeune, just like walking back to a military base on an access road owned and maintained by the Navy, involves military life. See Lauer v. United States, 968 F.2d 1428, 1429-30 (1st Cir. 1992) (Feres doctrine barred negligence recovery for naval enlistee injured when walking back to base on main access road

6

owned, maintained and patrolled by Navy); see also Schnitzer v. Harvey, 389 F.3d 200, 202 (D.C.Cir. 2004) (Feres doctrine barred claim of negligent maintenance of ceiling in common room brought by convicted military inmate injured when portion of ceiling collapsed). Injury from the activity of drinking water at the base is also similar to injury from the activity of sleeping in a barracks off hours which the Court considered barred in Feres. See Feres, 340 U.S. at 136-137 & 146 (barring injury to active duty serviceman who was sleeping at time of fire in his barracks). Indeed, a United States District Court in the Southern District of Texas rejected a claim brought by a physician at Camp Lejeune who developed cancer and other ailments after leaving the camp purportedly due to drinking and bathing in the contaminated water at Camp Lejeune. Gros v. United States, 2005 WL 6459834, *1-2 (S.D.Tex. Sept. 27, 2005).[3]

As to the third element and construing the record in plaintiff's favor, the commanding officer at Camp Lejeune is responsible for maintenance activities at the base including the purchase, distribution and operation of utilities at the camp.

---

[3] The Fifth Circuit affirmed the decision in an unpublished opinion. Gros v. United States, 232 Fed.Appx. 417 (5th Cir. May 15, 2007).

(Docket Entry # 4, pp. 3 & 15). He is also responsible for complying with water pollution control laws. (Docket Entry # 4, p. 43). Failing to maintain a water supply free of toxic chemicals necessarily draws into question the conduct of plaintiff's superiors at the camp who are responsible for maintaining and overseeing the operations at the camp.

The final element, "often stressed as particularly important," is "whether the injured party was himself in some fashion on military service at the time of the incident." Day v. Massachusetts Air Nat. Guard, 167 F.3d at 682. The complaint states that plaintiff was on active duty status while stationed at Camp Lejuene when he drank the contaminated water. In the administrative claim, plaintiff repeats that he was serving his country when poisoned by the contaminated water. The questionnaire reflects that plaintiff was serving in the armed forces at the time he believes he was exposed to the contaminated water at Camp Lejeune. While at work at the Hadnot Point industrial area for a number of months, he drank the contaminated water at the chow hall. Throughout, plaintiff was on active duty at the time he drank the contaminated water that caused his injury.

The foregoing elements thus establish that the Feres

doctrine bars the present claim. Furthermore, the doctrine's purposes do not yield a different result, as aptly explained by the United States (Docket Entry # 11, pp. 16-18). Plaintiff's assertion of discrimination on the basis that civilians affected by the tainted water have a remedy whereas the <u>Feres</u> doctrine bars his suit (Docket Entry # 12) does not provide a basis to ignore Supreme Court precedent. <u>See</u> <u>Tootle v. USDB Commandant</u>, 390 F.3d 1280, 1283 (10th Cir. 2004) ("[n]otwithstanding potential equal protection concerns about the <u>Feres</u> doctrine, however, this panel is bound to follow the decisions of the Supreme Court and the published decisions of this court"). Further, the fact that the latent injuries manifested years after the exposure to the contaminated water does not prevent the doctrine's application. <u>See</u> <u>Maas v. United States</u>, 94 F.3d 291, 294 (7th Cir. 1996) (barring the plaintiffs' claims "under <u>Feres</u>, even though their illnesses appeared after discharge"); <u>In re Agent Orange Product Liability Litigation</u>, 818 F.2d 194, 200 (2nd Cir. 1987) ("veterans' claims for post-service injuries are inseparably entwined with and directly related to their military service" and "majority of other Circuits would rule similarly") (collecting cases); <u>Gaspard v. United States</u>, 713 F.2d 1097, 1100-1101 (5th Cir. 1983).

Finally, the similarity to the facts and circumstances in Feres confirms the bar. One of the three cases addressed in Feres involved an executrix seeking recovery from the United States for the decedent's death. The decedent "perished by fire in the barracks at Pine Camp, New York, while on active duty in service of the United States." Feres v. United States, 340 U.S. at 137. The executrix alleged liability on the basis of negligence "in quartering him in barracks known or which should have been known to be unsafe because of a defective heating plant, and in failing to maintain an adequate fire watch." Id. Plaintiff similarly maintains he was injured while on active duty at a military base due to unsafe conditions at the base, i.e., allowing contaminated drinking water. See also Gros v. United States, 2005 WL 6459834 at *2 ("Feres held that the serviceman's injury, . . . caused by a fire in his barracks while he was sleeping, was incident to service" and the plaintiff's "injury, arising from the use of contaminated water in his home [at Camp Lejeune], is legally indistinguishable from the Feres injury").

## CONCLUSION

In accordance with the foregoing discussion, this court

**RECOMMENDS**[4] that the motion to dismiss (Docket Entry # 10) be **ALLOWED.**

                                    /s/ Marianne B. Bowler
                                    **MARIANNE B. BOWLER**
                                    United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.